IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARMIN WAND III,

                Plaintiff,

v.

WARDEN MR. G. BOUGHTON, et al.

                Defendants.

OPINION AND ORDER

3:19-cv-927-wmc

---

*Pro se* plaintiff Armin Wand III, who currently is incarcerated at the Wisconsin Secure Program Facility ("WSPF"), filed this lawsuit pursuant to 42 U.S.C. § 1983, claiming that various WSPF employees violated his constitutional rights in mishandling his conduct report and then in retaliating against him for subsequently filing this lawsuit. Wand has filed a proposed amended complaint (dkt. #6), which the court accepts as the operative pleading for purposes of screening, as required by 28 U.S.C. § 1915A. For the reasons set forth below, although it appears that Wand's allegations do not support a claim upon which relief can be granted, the court will give Wand the opportunity to amend his complaint to address the identified deficiencies.

ALLEGATIONS OF FACT[1]

**A. Parties**

At all relevant times, Wand was an inmate at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Wand has named seven defendants: Warden G. Boughton,

---

[1] Courts must read allegations in *pro se* complaints generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). The court assumes the facts above based on the allegations made in plaintiff's complaint.

Security Director Kartman, Unit Manager Anthony Broadbent, Lieutenant Thomas Taylor, Correctional Officer Logan Brown, Sergeant Winger, and Examiner E. Ray. All defendants are or were employed by the Wisconsin Department of Corrections at the Wisconsin Secure Program Facility.

### B. Wand's Conduct Report and Subsequent Reversal

On or around June 16, 2019, defendant Brown ordered Wand to move to different living quarters, and Broadbent issued conduct report number 22459. In the conduct report, Broadbent alleged that on June 14, 2019, Wand passed two envelopes and a piece of paper to another inmate in violation of Wis. Admin. Code §§ DOC 303.47 (Possession of Contraband—Miscellaneous), 303.28 (Disobeying Orders), and 303.40 (Unauthorized Transfer of Property).

After moving to new living quarters as ordered, Wand approached the sergeant cage -- where Brown was the acting sergeant -- to inquire about why he was relocated. While Wand and Brown were speaking, Correctional Officer K. Jorgenson showed Wand conduct report 22459 and offered Wand seven days of room confinement, apparently in an effort to resolve the charges in the conduct report informally. Wand responded to Jorgenson's offer by asserting that the violations alleged in the report were insufficient to merit a change in living quarters. Wand further asserted his innocence as to the contraband and insubordination charges, while apparently admitting the unauthorized transfer of property charge. During Wand's exchange with Brown and Jorgenson, Broadbent entered the Foxtrot Unit and asked that Wand accompany him to the social worker's office.

At the social worker's office, Broadbent informed Wand about the conduct report, and Wand replied that he was aware of the charges and already rejected the punishment Jorgenson offered. Wand then reiterated his assertions of innocence, and Broadbent responded by stating that the seven days of room confinement would be increased to ten days as a result of Wand contesting the ticket. At this point, Broadbent signed the report, and Taylor affirmed the allegations from the incident. That day, Wand began to serve ten days in room confinement.

Also on that day, Wand filled out and submitted an appeal of the disposition of the conduct report, arguing that he had received permission to pass another inmate materials. Specifically, Wand alleged that Correctional Officer Lindsey-Stout gave another inmate permission to place a note in Wand's cell for Wand to send a cell phone message to that inmate's father. Wand further alleged that he never received the note since Sergeant Saylor saw the inmate drop the note in Wand's cell and had it confiscated before Wand saw it. Then, when that inmate learned that Wand did not receive the note, he re-wrote it and transferred it to Wand, and Wand sent the message and handed the note back to that inmate, once Wand was told that the cell phone message would not be accepted by that other inmate's father.

On the day Wand submitted this appeal, Deputy Warden Peter Jaeger reviewed the camera footage and documentary evidence and modified the disposition of the conduct report. Although Jaeger did agree that Wand violated §§ DOC 303.47, 303.28, and 303.40, only a reprimand was warranted, since ten days' room confinement was an

excessive disposition.[2]  Wand claims that the conduct report has not been removed from his record, and he believes it was used against him at a Program Review Committee hearing.

### C. Retaliation After Filing This Lawsuit

Wand filed this complaint initiating this lawsuit on November 13, 2019.  He alleges that defendant Broadbent is aware of this lawsuit and had since retaliated against him in a number of ways.

*First*, on the day he filed this lawsuit, Broadbent and Saylor spoke with Wand about a letter that allegedly incriminated Wand and other inmates because it indicated that Wand was being extorted by inmate Omark Ward.  Wand denied that the allegations contained in the letter were true (he believes that another inmate who was "having problems" with him and Ward wrote the letter, apparently to get them in trouble).  However, Broadbent threatened to charge Wand in a conduct report if Wand refused to corroborate the contents in the letter within a "72-hour deadline."  Wand has not alleged whether Broadbent issued him a conduct report or if Wand corroborated the statements in the letter.

*Second*, on January 13, 2020, inmate Walter Rupar was helping Wand with legal matters during law library time.  Apparently Broadbent moved Rupar to a different housing unit so that Rupar would no longer be able to help him with his legal matters.

---

[2] A reprimand is an oral statement to an inmate addressing the inmate's behavior when the inmate is found guilty of an offense.  Wis. Admin. Code § DOC 303.70(1).

OPINION

The court understands plaintiff to be pursuing Fourteenth Amendment due process and First Amendment retaliation claims. As will be explained below, as currently pled, plaintiff's allegations do not support these claims, but the court will allow plaintiff the opportunity to amend his complaint, to the extent he omitted relevant facts.

I. **Due Process**

Plaintiff claims that defendants violated his Fourteenth Amendment due process rights in punishing him to room confinement and failing to remove the conduct report from his record. To state a procedural due process claim, Wand must show that (1) he has a liberty or property interest with which the state interfered; *and* (2) the procedures afforded him to address that interference were constitutionally deficient. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009).

A. **Cell confinement punishment**

Plaintiff's one-day room confinement falls far short of implicating a liberty interest, so this claim fails on the first element. A prisoner's placement in disciplinary segregation may implicate a liberty interest under some circumstances. *See Marion*, 559 F.3d at 697 (citing *Wilkinson*, 545 U.S. at 224; *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). To implicate a liberty interest, such a placement must result in an atypical and significant hardship when compared to the ordinary incidents of prison life. *Townsend v. Fuchs*, 522 F.3d 765, 768 (7th Cir. 2008) (quoting *Sandin*, 515 U.S. at 484-86). "[B]oth the duration

5

and the conditions of the segregation must be considered in the due process analysis." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *see also Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006) (fourteen-day placement in segregation may have implicated liberty interest where inmate was denied sensory input, had no privileges, had to sleep naked on concrete slab); *but see Obriecht v. Raemisch*, 565 F. App'x 535, 539-40 (7th Cir. 2014) (seventy-eight day confinement with mattress placed directly on wet floor did not implicate liberty interest); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997) (seventy day confinement with another inmate in one-man cell for twenty-four hours a day did not implicate liberty interest). Here, given that plaintiff alleges that he spent just *one* day in room confinement and he has not pled *any* facts suggesting that he dealt with overly harsh conditions, his due process challenge to the conduct report punishment fails.

### B. Failure to remove the conduct report from Wand's record

Plaintiff further claims that defendants violated his due process rights because the conduct report has not been removed from his disciplinary record, which plaintiff claims violates the prison's own rules. Again, plaintiff fails to allege facts suggesting a loss of liberty.

As an initial matter, plaintiff has not identified the regulation he believes defendants violated in failing to remove the conduct report from his record. Even assuming that such a regulation exists, state prison regulations, by themselves, do not create liberty interests. *Wilkinson*, 545 U.S. at 223 ("[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those

6

conditions themselves 'in relation to the ordinary incidents of prison life.'") (citation omitted); *Marion*, 559 F.3d at 699 ("Whether an inmate has a protected liberty interest must be determined from the *actual* conditions of confinement and not simply from a review of state regulations.") (emphasis in original).  And the failure to comply with state procedural rules does not violate the federal constitution.  *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

Furthermore, plaintiff has not otherwise alleged how the presence of this conduct report on his record has amounted to a loss of liberty.  Perhaps plaintiff believes that the conduct report is thwarting his ability to be transferred to an institution with a lower security level, but it is well-settled that an inmate does not have a protected interest in a particular prison or security classification.  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments.") (internal citations omitted); *see also Healy v. Wisconsin*, 65 F. App'x 567, 568 (7th Cir. 2003) ("inmates do not have a protected liberty interest in a particular security classification"); *Fields v. Cartwright*, No. 13-cv-01305-JPG, 2014 WL 201531, at *2 (S.D. Ill. Jan. 17, 2014) ("No constitutional claim arises from Plaintiff's reclassification as a 'high' escape risk."); *Reddin v. Israel*, 455 F. Supp. 1215, 1219 (E.D. Wis. 1978) ("Absent a statutory right created by the State of Wisconsin, the plaintiff has no constitutionally protected liberty or other interest in his prisoner classification or eligibility for rehabilitation programs, even when imposition of a particular classification or denial of eligibility for certain programs causes a grievous loss.").  Accordingly, plaintiff's allegations

do not give rise to an inference that he suffered a loss of liberty, he may not proceed on a due process claim.

## II. Retaliation

To state a First Amendment retaliation claim, a plaintiff must allege three elements: (1) speech protected by the First Amendment; (2) a deprivation that would likely deter similar activity in the future; and (3) that the activity was "at least a motivating factor" in the defendant's decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546. Plaintiff next claims that Broadbent retaliated against him in violation of his First Amendment rights in two instances. First, plaintiff alleges that Broadbent retaliated against plaintiff for contesting the issuance of a conduct report by increasing his cell confinement sentence from seven to ten days. Second, plaintiff alleges that Broadbent retaliated against him for filing this lawsuit, when he threatened to issue him a conduct report if he did not provide information about another inmate. The court addresses these proposed claims in turn.

### A. Retaliation for challenging conduct report

Plaintiff claims that Broadbent retaliated against him for contesting the conduct report by increasing his room confinement disposition from seven to ten days. The court will accept that plaintiff's challenge to the conduct report as constitutionally protected conduct. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (prisoners have a right to criticize prison policies, but must "do so 'in a manner consistent with his status as a prisoner'") (quoting *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir.

8

2004)). Nonetheless, given that the Jaeger dismissed the conduct report after plaintiff appealed it, plaintiff's claim that Broadbent increased the associated punishment does not support a claim for relief under § 1983. *Bridges*, 557 F.3d at 555 ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as a basis of a § 1983 action.") (citation omitted); *see also Thomas v. Wolfe*, No. 112-cv-443, 2016 WL 4592201, at *14 (S.D. Ind. Sept. 2, 2016) (dismissing retaliation claim when inmate was found not guilty on charge in conduct report); *McKinley v. Atchinson*, No. 16-cv-661-MJR, 2016 WL 3746208, at *5 (S.D. Ill. July 13, 2016) (plaintiff failed to state retaliation claim when conduct report was dismissed prior to the disciplinary hearing). In any event, Broadbent's retaliatory increase of the cell confinement sentence was of no moment. Plaintiff served just one day of cell confinement, so Broadbent's action had no *actual* adverse impact on plaintiff. Accordingly, plaintiff's retaliation claim fails for that reason as well. *See Greene v. Doruff*, 660 F.3d 975, 978–79 (7th Cir. 2011) ("Without an injury, there is no tort, including a constitutional tort such as infringing a person's freedom of speech.").

### B. Retaliation for filing a lawsuit

Plaintiff also claims that Broadbent retaliated against him for filing this lawsuit when he threatened plaintiff that he would charge him in a conduct report if plaintiff did not corroborate statements in a letter alleging another inmate's extortion of plaintiff. Though a plaintiff's lawsuit is constitutionally protected conduct, *see Zorzi v. Cty. of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994), this retaliation claim fails at the second element. Plaintiff simply alleges that Broadbent threatened to issue a conduct report in retaliation for plaintiff initiating this lawsuit; plaintiff, however, has not alleged that Broadbent's

9

threat *actually* came to fruition. Courts often reject retaliation claims based solely on incidents of verbal harassment or other insufficiently adverse conduct. *See, e.g.*, *Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008) (officers' threats and racist remarks were not sufficiently adverse to deter a prisoner from engaging in protected conduct); *Sanders v. Salemi*, No. 10-C-7203, 2012 WL 353844, at *5 (N.D. Ill. Feb. 1, 2012) (retaliation claim failed where officer held out middle finger, stuck out her tongue, and said she would "get" plaintiff). Furthermore, "a single warning does not result in a negative consequence for an inmate and only serves to inform an inmate of behavior that should be corrected." *Long v. Harring*, 16-cv-779-slc, 2018 WL 2464551, at *8 (W.D. Wis. June 1, 2018); *Sundermeyer v. Kutina*, No. 19-cv-502-bbc, 2019 WL 4142683, at *5 (W.D. Wis. Aug. 30, 2019) (an officer's instruction to an inmate that he would issue plaintiff a conduct report if he did not use the PREA hot line appropriately was not sufficiently adverse to support a retaliation claim); *see also Bridges*, 557 F.3d at 555 ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ."). Accordingly, the court will not grant plaintiff leave to proceed on a retaliation claim based on Broadbent's alleged threat.

In general, before the court dismisses an action for failure to state a claim upon which relief can be granted, courts must give the plaintiff an opportunity to amend his complaint, unless it is apparent that such an amendment would be futile. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts . . . generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to

amend her complaint."). Although the court is skeptical that plaintiff has omitted facts material to his proposed due process and retaliation claims or that any additional facts would result in a finding of a claim, nonetheless, the court will grant plaintiff 21 days to file an amended complaint to address the deficiencies described above, assuming he can do so in good faith.

## ORDER

IT IS ORDERED that:

1) Plaintiff Armin Wand's complaint is DISMISSED without prejudice for failure to meet the requirements of Federal Rule of Civil Procedure 8. Plaintiff may have until **May 26, 2021**, to submit an amended that addresses the deficiencies described above. Plaintiff should use the legal standards set forth above as guidelines.

2) If plaintiff does not file an amended complaint as directed, this case will be closed without further notice. Any amended complaint will be screened in accordance with 28 U.S.C. § 1915(e)(2). If the amended complaint fails to comply with this order, the court will dismiss the complaint and this action for failure to state a claim upon which relief can be granted.

Entered this 5th day of May, 2021

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge