IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARMIN WAND, III,

                Plaintiff,

v.

ANTHONY BROADBENT,

                Defendant.

OPINION and ORDER

19-cv-927-wmc

---

      Plaintiff Armin Wand, III, a state inmate who is representing himself, was granted leave to proceed with three First Amendment retaliation claims against defendant Unit Manager Anthony Broadbent. (Dkt. #10.) The court previously granted defendant's motion for partial summary judgment and dismissed one of those retaliation claims for failure to exhaust administrative remedies. (Dkt. #49.) Defendant has now filed a motion for summary judgment on the remaining retaliation claims against him, arguing that they are without merit. (Dkt. #65.) Plaintiff has filed more than one response, and he has also filed motions to: (1) sanction defendant for spoliation of evidence; (2) challenge the sufficiency of defendant's answers to discovery; and (3) compel more complete responses to his discovery requests. (Dkt. #33; Dkt. #36; Dkt. #44.) For the reasons explained below, the court will deny the motions filed by plaintiff, grant defendant's motion for summary judgment, and dismiss this case.

UNDISPUTED FACTS[1]

Plaintiff Wand is now incarcerated at the Fox Lake Correctional Institution operated by the Wisconsin Department of Corrections ("DOC"). At all times relevant to this case, however, Wand was confined at its Wisconsin Secure Program Facility ("WSPF"), a maximum-security institution, where defendant Broadbent was employed by DOC as a housing unit manager responsible for the safety, treatment, and general living conditions of all inmates assigned to that facility.[2] Among other duties, Broadbent was responsible for all activities within his unit, including monitoring the overall goals, policies, and procedures as part of WSPF's management team. He was also expected to look out for individuals housed on the units assigned to him. Broadbent explains that this required him to look out of inmates who may be vulnerable to exploitation by others, as well as those inmates who might seek the weakness of others to exploit to advance their own interests.

On November 12, 2019, Wand filed this lawsuit against several officials at WSPF, including Unit Manager Broadbent, arising out of a conduct report that Wand received on June 16, 2019 (CR #22459). (Dkt. #1; Dkt. #1-1, at 1.) In particular, Wand claims Broadbent increased his punishment from seven days to ten days of room confinement in retaliation for his contesting the original conduct report. Subsequently, Wand amended

---

[1] Unless otherwise noted, the following facts are undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence of record. While plaintiff purports to object to many of defendant's proposed findings of fact, his objections are either immaterial or unsupported by evidence and are without merit. *See Proc. to be Followed on Mot. For Summ. Judg.,* § II(C), (E).

[2] Broadbent retired from DOC in February of 2023. (Broadbent Decl. (dkt. #68) at ¶ 2.)

2

his complaint to assert two additional acts of retaliation by Broadbent. (Dkt. #6; Dkt. #8.)

First, Wand claims that another inmate named Damien Green submitted a letter to security staff, which reportedly accused two other inmates named Omark Ward and Jelani Clements of extorting Wand. When Broadbent interviewed Wand about the contents of that letter on November 19, 2019, however, he allegedly threatened *Wand* with another conduct report for engaging in an "unauthorized exchange of property" in violation of prison rules. While Broadbent does not recall that conversation, he does remember considering Wand a vulnerable individual, who had been asked previously to purchase merchandise for another inmate, which is considered a prohibited unauthorized transfer of property. Regardless, Wand specifically claims that Broadbent then threatened to issue conduct reports not only against Ward, and Clements, but also against Wand in retaliation for his refusal to corroborate their extortion as set out in Green's letter.

Second, Wand claims that Broadbent retaliated for Wand's filing his original complaint in this case by depriving him of access to legal assistance from another inmate named Walter Rupar, who was working as a law library clerk in the Foxtrot housing unit at WSPF, where both Wand and Rupar were assigned. Wand explains that he required help from Rupar in filing his complaint because he is cognitively disabled and legally blind (dkt. #8, at 16 ¶ 78), and DOC institutions were required to provide inmate law workers to assist other inmates in using legal research resources. Inmates could also submit a request to attend the law library at the same time as another inmate for the purpose of seeking help with legal documents.

3

As defendant Broadbent points out, however, this second alleged act of retaliation has another more plausible explanation. It seems that on December 12, 2019, then-WSPF Security Director Mark Kartman issued Rupar a conduct report (CR #65150) for storing pornography on his Education Network ("EDNET") computer account and music on a flash drive, both in violation of prison rules. Current Security Director Joseph Cirian further explains that EDNET accounts are utilized by DOC institutions for educational, legal, and re-entry purposes, and by inmates to type their own briefs or legal work, which can be saved to a personal folder within their individual EDNET account. While inmates may also purchase flash drives, they must remain in the inmates' assigned unit and secured by staff. Nevertheless, on December 19, 2019, when Broadbent received a request from Wand seeking permission for Rupar to assist with Wand's legal documents, Broadbent initially *granted* his request. On December 20, 2019, however, Broadbent became aware that Rupar was found guilty of the code violations alleged against him in the conduct report *and* was removed from his position as a law library clerk by the job placement committee. Moreover, following the loss of his position, Rupar was transferred to a different housing unit at WSPF on January 13, 2020. Still, Wand claims that Broadbent transferred Rupar to another housing unit in retaliation for helping him file this lawsuit. (Dkt. #6, at 11-12; Dkt. #8, at 7-8.)

OPINION

The court granted Wand leave to proceed past the screening stage with his initial claim concerning the conduct report he received on June 16, 2019 (CR #22459), as well

4

as retaliation claims alleged against Broadbent (dkt. #10, at 7-8), although it later granted Broadbent's motion for partial summary judgment on Wand's conduct report claim for lack of exhaustion. (Dkt. #49.) Broadbent now moves for summary judgment on the merits of Wand's remaining retaliation claims for: (1) threatening him with a conduct report in November 2019, for refusing to corroborate inmate Green's letter alleging extortion by inmates Ward and Clements; and (2) transferring Rupar to another housing unit in January 2020, supposedly for helping Wand file this lawsuit. (Dkt. #65.)

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, therefore, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to [reach] a verdict in [his] favor." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation and internal quotation marks omitted). And although pro se litigants are entitled to liberal construction of their pleadings, they still have the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on summary judgment.") (citation omitted). Finally, while the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the

evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), the nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). The court will first address the merits of plaintiff Wand's retaliation claims, under the First Amendment, then turn to defendant Broadbent's affirmative defense of qualified immunity.

## I.    Retaliation Claims

Plaintiff claims that defendant is liable under 42 U.S.C. § 1983 for retaliating against him in violation of his First Amendment rights. To prevail on a First Amendment retaliation claim, a prisoner must demonstrate that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [defendant's] decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707-08 (7th Cir. 2023) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). If the plaintiff satisfies all three elements of a retaliation claim, the burden then shifts to the defendant to show that he would have taken the same action "even in the absence of protected conduct." *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). In other words, a defendant can rebut the element of causation by showing that the alleged harm "would have occurred anyway." *Id*. at 980. If a defendant makes this showing, the burden shifts back to plaintiff to demonstrate that the proffered reason for

6

the adverse action was pretextual and the real reason was retaliatory animus. *See Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id*.

As to the first element, the parties do not dispute that filing grievances and lawsuits about conditions of confinement is considered protected activity for purposes of a prisoner's retaliation claim. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (inmates have a right under the First Amendment "to seek administrative or judicial remedies of conditions of confinement") (quoting *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)). Accordingly, the court assumes for purposes of the pending summary-judgment motion that plaintiff has satisfied this element.

The second element, requiring a deprivation that would likely deter future First Amendment activity, is an objective test which focuses on whether the alleged conduct by the defendant "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). Generally, the severity of retaliatory conduct is a fact question, "but when the asserted injury is truly minimal, [courts] can resolve the issue as a matter of law." *Id*. at 647. While an increase of room confinement from seven to ten days to deter an inmate of ordinary firmness from contesting a conduct report may seem marginal as a deterrent, the court will grant that a reasonable jury could find it

enough. Similarly, though marginal, withdrawing a fellow inmate's legal help would seem of questionable deterrence, the court will assume the same.

This leave the third element, that the retaliation was a "motivating factor" for the defendant's actions. This requires plaintiff to produce sufficient evidence for a reasonable jury to find proof of a causal link between the plaintiff's protected activity and the unlawful retaliation. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Specifically, to prove requisite causation, the plaintiff must show that the defendant knew about his protected activity and acted with a desire to chill that conduct. *Daugherty,* 906 F.3d at 610; *Healy v. City of Chi.*, 450 F.3d 732, 740-41 (7th Cir. 2006). A plaintiff may show that his protected activity was a motivating factor for alleged retaliatory conduct by presenting either direct or circumstantial evidence, including evidence of suspicious timing. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012).

Courts are entitled to treat retaliation claims from prisoners in particular "with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *see also Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020) ("First Amendment retaliation claims brought by inmates should be approached 'with skepticism and particular care' because such claims are easy to allege and difficult to prove."). In considering a retaliation claim in the prison context, courts must also "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock*, 102 F.3d at 275 (citing *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)); *see also Sandin v. Conner*, 515 U.S. 472,

481 (1995). More specifically, the Seventh Circuit has cautioned against "excessive judicial involvement in day-to-day prison management" and for deference to prison officials "responding to grievances and maintaining order in a volatile environment," as well as to the justifications they offer for their decisions. *Holleman*, 951 F.3d at 880 (citations omitted). Ultimately, judges are not "super-wardens who sit to critique the efficacy or wisdom of prison management choices." *Id*. Under this standard, each of the actions plaintiff now argues were retaliatory falls short of the mark.

### A. Threatening to Issue a Conduct Report

Plaintiff contends that defendant first threatened him with a conduct report after he refused to corroborate the contents of a letter given to security officials by inmate Damien Green in November of 2019, which allegedly reported that plaintiff was the victim of extortion by two other inmates, Ward and Clements. Plaintiff contends that he refused to corroborate the letter because Green's report was false. Defendant does not recall having a conversation with plaintiff about the contents of Green's letter, but acknowledges that he may have interviewed him as alleged in the complaint. (Broadbent Decl. (dkt. #68) at ¶¶ 9, 13, 18.) Defendant also explains that he considered plaintiff a vulnerable individual during his time at WSPF and recalls another instance in which plaintiff had been persuaded by another inmate to purchase a new pair of shoes for him and was trying to send money to that same inmate. (*Id*. at ¶¶ 12, 14.) On that occasion, defendant warned plaintiff that making an unauthorized transfer of property to another inmate would violate prison rules and could result in a conduct report. (*Id*. at ¶ 16.)

9

Even so, plaintiff has failed to show that defendant's alleged actions constituted retaliation for several reasons. To begin, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Plaintiff does not dispute that it is a disciplinary offense within DOC for an inmate to engage in conduct that results in an unauthorized transfer of property. *See* Wis. Code DOC § 303.40 ("Any inmate who gives, receives, sells, buys, exchanges, barters, lends, borrows, or takes any property from another inmate without authorization is guilty of unauthorized transfer of property."). In particular, courts have repeatedly held that prison officials have a legitimate penological interest in preventing or discouraging extortion by prisoners, including through the mail or through the unauthorized transfer of property. *See Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989) (prison officials have a legitimate interest in searching outgoing mail in order to prevent the transmission of "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion"); *Steffey v. Orman*, 461 F.3d 1218, 1222 (10th Cir. 2006) (upholding a prison regulation controlling receipt of funds by inmates as related to a penological interest in preventing prisoners from using family to pay off debts incurred within prison and discouraging extortion of fellow inmates' families with threats of harm); *Lager v. Kemna*, 133 F.3d 922, 1997 WL 768350 (8th Cir. 1997) (per curiam, unpublished table op.) (agreeing that a prison regulation was reasonably related to the legitimate penological interests of preventing extortion and blackmail and avoiding tension among inmates); *Charriez v. Garcia*, No. 4:11-cv-379, 2014 WL 1328508, at *11 (N.D. Fla. March 31, 2014) (upholding limitations on a prisoner's rights that were "pursuant to a legitimate

10

penological interest in maintaining the safety and security of the institution by preventing the introduction of contraband and the possible extortion of an inmate by another inmate"); *Hedgespeth v. Bartow*, No. 09-cv-246-slc, 2010 WL 2990897, at *7 (W.D. Wis. July 27, 2010) (civil commitment facilities "have a legitimate interest in maintaining security of the institutions by preventing patients from improperly using computers to engage in fraud, extortion and other criminal activity").

Moreover, while defendant does not recall the interview about Damien Green's letter, plaintiff presents no evidence to contradict defendant's explanation that he may have warned plaintiff that allowing himself to be extorted by other inmates could result in a conduct report for making an unauthorized transfer of property. "Preserving institutional order, discipline, and security are legitimate penological goals that will defeat a claim of retaliation where they motivated the official act in question." *Blakely v. Jones*, No. 3:18-cv-5021, 2019 WL 234814, at *9 (W.D. Wash. May 15, 2019) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)), *R&R adopted,* 2019 WL 2340961 (W.D. Wash. June 3, 2019), *aff'd*, 816 F. App'x 161 (9th Cir. Aug. 11, 2020).  Thus, a threatened conduct report or warning that merely informs an inmate about a prison rule or policy applicable to all inmates is insufficient to support a retaliation claim. *Sundermeyer v. Kutina*, No. 19-cv-502-bbc, 2019 WL 4142683, at *5 (W.D. Wis. Aug. 30, 2019); *see also Long v. Harring*, No. 16-cv-779-slc, 2018 WL 2464551, at *8 (W.D. Wis. June 1, 2018) ("A warning by itself does not constitute an adverse action sufficient to deter a person of ordinary firmness from filing an inmate complaint.").

Finally, plaintiff concedes that defendant did not actually issue a conduct report to punish him in connection with the contents of Green's letter or defendant's refusal to cooperate in his investigation of possible extortion more generally. Thus, even assuming that plaintiff perceived defendant's warning as a threat, he fails to show that a rational trier of fact could find defendant's comments would deter an individual of ordinary fitness from First Amendment activity. *See Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (absent a showing of harm, threats of unspecified disciplinary action do not constitute adverse actions for purposes of a retaliation claim). Therefore, defendant is entitled to summary judgment on plaintiff's claim of retaliation in connection with a threatened, but-not-issued conduct report in November 2019.

## B. Transferring Rupar to Another Housing Unit

Plaintiff also claims defendant retaliated against him for filing this lawsuit by transferring Rupar to another housing unit, effectively depriving him of obtaining Rupar's assistance with legal documents and the pursuit of this case. However, in response, defendant points out that plaintiff cannot establish a retaliation claim because plaintiff remained able to request assistance from Rupar under DOC policy, even after he was removed from his library position. Nor does plaintiff dispute this. Thus, while perhaps making it more difficult, plaintiff has again not shown an actual deprivation or punishment sufficient to deter an individual of ordinary fitness from continuing his lawsuit.

As importantly, defendant argues that plaintiff fails to show that retaliation was a motivating factor for Rupar's transfer for several reasons. *First*, defendant contends that he did not even learn of the lawsuit in this case, which was filed on November 12, 2019,

until after the court screened plaintiff's amended complaint and granted him leave to proceed with retaliation claims against defendant in April of 2023. (Broadbent Decl. (dkt. #68) at 6.) Nor does plaintiff present any evidence from which a reasonable trier of fact could find that defendant knew about this lawsuit before Rupar was transferred on January 13, 2020. Instead, plaintiff merely *speculates* that defendant learned of the lawsuit before the transfer because defendant's wife was working for DOC as an officer in the law library on the day his original complaint was e-filed. Speculation alone is insufficient to survive summary judgment. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). At a minimum, a plaintiff must "present sufficient evidence" that a defendant knew of complaints allegedly prompting the retaliation. *Wheeler v. Radtke*, 694 F. App'x 1023, 1025-26 (7th Cir. 2017). Here, plaintiff has not presented any such proof. If anything, plaintiff's bare assertion that defendant had knowledge of the filing of his complaint in suit and harbored retaliatory intent in transferring Rupar is *underminded* by the undisputed fact that, shortly after this lawsuit was filed, defendant actually *approved* plaintiff's request for assistance with his legal documents from Rupar on December 18, 2019. (Broadbent Decl. (dkt. #68) at ¶¶ 23-24 (citing Ex. 1002).)

*Second*, although he does not recall the *specific* reason Rupar was transferred to another housing unit after being removed from his position as a clerk in the law library, defendant avers it had nothing to do with plaintiff. (Broadbent Decl. (dkt. #68) at ¶ 33.) In support, defendant points to the Inmate Complaint Examiner's Report of the investigation into plaintiff's administrative complaint of retaliation against him regarding Rupar's transfer. The Inmate Complaint Examiner interviewed defendant in connection

with plaintiff's administrative complaint on January 28, 2020, and determined that "Rupar being moved had absolutely nothing to do with Mr. Wand," and instead, Rupar was moved for reasons that would not be divulged.  (ICE Report Complaint Number WSPF-2020-1707, Dkt. #70-3, at 2.)  WSPF Security Director Jacob Cirian also explains that, for security reasons, prison officials do not provide reasons to inmates regarding transfer decisions or discipline issued to other inmates within a housing unit.  (Cirian Decl. (dkt. #69) at ¶ 33.)  Because Rupar received a conduct report for downloading pornography while working as a clerk in the law library, Cirian explains further that the decision to remove him from that position was warranted under the prison policy on inmate work assignments.  (Cirian Decl. (dkt. #69) at ¶¶ 9-12; Ex. 1001, DAI Policy No. 309.00.01 on Inmate Work Placement (dkt. #70-2) at III.B.1.)  Moreover, plaintiff does not dispute that Rupar was removed from his position for a legitimate penological reason, nor otherwise offer any evidence from which a trier of fact could reasonable infer that the stated reason for Rupar's transfer was pretextual.  *See Zellner*, 639 F.3d at 379.

*Third*, with no direct evidence of retaliation, plaintiff appears to base his retaliation claim solely on the timing of Rupar's housing transfer following the filing of this lawsuit. However, suspicious timing alone is insufficient to raise an inference of causation between protected activity and alleged retaliation or even create a triable issue of fact.  *See Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) ("Suspicious timing may be just that -- suspicious -- and a suspicion is not enough to get past a motion for summary judgment."). Rather, to rely on suspicious timing, a plaintiff must at least demonstrate that an adverse action followed "close on the heels of protected expression" *and* the person acting adversely

knew of the protected expression. *Kidwell*, 679 F.3d at 966. Here, however, the timing of events shows that Rupar was transferred to another housing on January 13, 2020, *two months* after Wand filed his lawsuit on November 12, 2019. Since the Seventh Circuit allows "no more than a few days to elapse" between the protected activity and the adverse action to raise an inference of causation, this timing falls well short. *See id*. at 966-67 (collecting cases and concluding that gaps of five weeks and two months between protected speech and allegedly retaliatory actions "militate[d] against allowing an inference of causation based on suspicious timing"). For all of these reasons, plaintiff has failed to present facts from which a reasonable jury could conclude that retaliation was a motivating factor behind Rupar's housing unit transfer. Therefore, summary judgment is proper in favor of defendant on this claim as well.

## II.     Qualified Immunity

Defendant alternatively asserts the defense of qualified immunity, which protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once this defense is raised, *plaintiff* bears the burden of proof by showing that: (1) the defendants violated a constitutional right; and (2) the constitutional right was clearly established at the time of the violation. *Garcia v. Posewitz*, 79 F.4th 874, 778 (7th Cir. 2023). "If either inquiry is answered in the negative, the defendant official is entitled to summary

judgment." *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. 2023) (citation and internal quotation marks omitted).

In this case, even if he could get past the rank speculation as to the reason for either of defendant's adverse actions, plaintiff has also not shown that defendant violated his constitutional rights by retaliating against him in violation of the First Amendment. Nor does he cite any case showing that an inmate may claim retaliation for a housing unit transfer supported by security reasons or that threats of a conduct report for not cooperating in a legitimate investigation of unlawful coercion by an inmate can sustain a retaliation claim, especially when no conduct report was ultimately issued. Because defendant is entitled to qualified immunity, the court will grant his motion for summary judgment for this additional reason.

### III. Plaintiff's Motions

Finally, the court will also briefly address plaintiff's motion for spoliation of evidence and his two additional motions related to his requests for discovery. Each motion is denied for the reasons set forth below.

#### A. Spoliation of Evidence

Plaintiff filed a motion for sanctions against defendant for spoliation of evidence concerning video related to the conduct report entered against plaintiff on June 16, 2019. (Dkt. #33.) Defendant filed a response, noting that plaintiff did not make a request to preserve the evidence, which concerns an incident occurring some five years ago. (Dkt. #50.) According to a declaration provided by defendant, the video system in place at the

prison unit where the incident occurred preserves footage for only 120 days *unless* there has been a request to preserve it. (Ray Decl. (dkt. #51, at ¶¶ 5-7.) Because there was no request to preserve the video, it was automatically overwritten and not retained. (*Id*. at ¶ 11.) Plaintiff offers no proof to the contrary.

Moreover, to succeed on a spoliation motion, a plaintiff must provide proof that the defendant actually destroyed material evidence *for the purpose* of hiding adverse information. *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). Not only does plaintiff not succeed in proving motive, he cannot demonstrate that the individual defendant here was in any way involved in the decision not to preserve the video; nor does he show that it was destroyed in bad faith. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (affirming the denial of a motion for sanctions when the moving party "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide discriminatory information").

Were that not enough, the video also pertains to a retaliation claim that was dismissed previously for lack of exhaustion and is not material to any claim in this case. Accordingly, plaintiff's motion for sanctions due to spoliation of evidence (dkt. #33) is denied.

### B. Discovery Motions

Plaintiff argues that defendant's answers to discovery are insufficient because defendant objected to 34 of 37 requests for admission before offering short answers. (Dkt. #37, at 4-19.) Plaintiff also argues that defendant's answers are "evasive." Thus, he seeks an order determining the sufficiency of those answers (dkt. #36) and moves to compel

more complete responses to his requests for admission, interrogatories, and for production of documents. (Dkt. #44.)

While the court discourages boilerplate objections, review of defendant's discovery responses shows multiple valid objections based on relevancy, in particular because plaintiff was seeking information regarding the retaliation claim that was dismissed previously by this court for lack of exhaustion. (Dkt. #38; Dkt. #46.) As to defendant's other objections, the court finds they, too, were justified. Regardless, plaintiff does not otherwise show that defendant's answers to his requests for admission are insufficient. Most importantly, plaintiff has *not* shown that his ability to respond to defendant's motion for summary judgment was in any way hampered by claimed insufficient answers to his discovery requests, and he does not otherwise show that any additional requested discovery could have created a genuine issue of material fact. *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000) (affirming the denial of an extension of time to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure, now codified in Rule 56(d)). Accordingly, plaintiff's discovery motions will also be denied.

ORDER

IT IS ORDERED that:

1. Defendant Anthony Broadbent's motion for summary judgment (dkt. #65) is GRANTED.

2. Plaintiff Armin Wand's motions (dkt. #33; dkt. #36; dkt. #44) are DENIED.

3. This case is DISMISSED with prejudice.

4. The clerk's office is directed to close this case and enter judgment in favor of defendant.

Entered this 21st day of January, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

Case: 3:19-cv-00927-wmc   Document #: 99   Filed: 01/21/25   Page 19 of 19